IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2001 Session

## DAVID ZIRKLE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Sevier County**
**No. 4783      John K. Byers, Senior Judge**

**No. E2000-02605-CCA-R3-PC**
**October 4, 2001**

The Petitioner was convicted by a Sevier County jury of first degree murder and especially aggravated robbery. The Petitioner was sentenced to life imprisonment for the murder conviction and to twenty-five years incarceration for the especially aggravated robbery conviction. The Petitioner appealed, and the convictions were affirmed by our Court. The Petitioner then filed for post-conviction relief, which was denied by the trial court. The Petitioner now appeals the trial court's denial of post-conviction relief, arguing that he received ineffective assistance of counsel at trial. Concluding that the Petitioner received effective assistance of counsel, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Linda J. Hamilton Mowles, Knoxville, Tennessee (on appeal); and Charles S. Sexton, Knoxville, Tennessee (at trial and on appeal); for the Appellant, David Zirkle.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner, David Zirkle, was convicted by a Sevier County jury of first degree murder, felony murder and especially aggravated robbery. The trial court merged the murder convictions and sentenced the Petitioner to a life sentence to be served consecutively to a twenty-five year sentence for the especially aggravated robbery conviction. The Petitioner appealed, and the convictions were affirmed by our Court. The Petitioner then filed for post-conviction relief, which was denied by the trial court. The Petitioner now appeals from the trial court's denial of post-conviction relief, arguing that he received ineffective assistance of counsel at trial.

On direct appeal, this Court summarized the facts of the underlying case as follows:

Curtis "Jack" Owenby befriended the victim, Larry Sayers,[1] while both men lived in Arizona. After Owenby moved back to Tennessee, he kept in touch with the victim through letters and phone calls. In early April of 1991, the victim telephoned Owenby to say that he would be traveling through Tennessee and planned to stop for a visit. On April 5 of that year, the victim, the defendant and James Hasinger[2] arrived in a white Courier pickup truck with a camper shell on top. Owenby had no previous acquaintanceship with either the defendant or Hasinger.

The four men spent the evening drinking beer at Owenby's cabin. When they had exhausted their supply of alcohol, Owenby and the victim went to buy more. In order to pay for the beer, the victim took money from a pouch that he wore around his neck.

That night, the defendant and Hasinger slept in the truck. The victim slept inside. When Owenby left for work at around six the next morning, the victim was awake but the defendant and Hasinger were still asleep. Owenby understood that the victim would be waiting for him when he returned from work.

When Owenby got back that afternoon, the three men and the truck were gone. Owenby noticed a spot on the ground which he first thought to be transmission fluid. When the victim had not contacted him by the following morning, however, Owenby re-examined the ground stain and decided that it was either blood or paint. He then noticed that the cap had been taken off his well and that a crowbar had been moved from his front porch. He also found the victim's money pouch on the ground. When he saw that the contents had been removed, Owenby called the authorities.

State v. Zirkle, 910 S.W.2d 874, 878-79 (Tenn. Crim. App. 1995).

The Petitioner and Hasinger were arrested in Norfolk, Virginia when Hasinger tried to cash one of the victim's checks. When the police arrested the Petitioner, he claimed that he did not know Hasinger; however, the Petitioner had Hasinger's identification in his pocket. The Petitioner also had the keys to the victim's truck in his pocket. The victim's body was found in a ravine near the Pigeon River in Cocke County, Tennessee.

Detective Brett Johnson testified that the vehicle was taken to the Norfolk Police Department compound and sold on June 21, 1991. Everything that was in the vehicle was auctioned along with the vehicle. Johnson testified that the police specifically looked for a tire tool in the truck before it

---

[1] The indictment refers to the victim as "Sayers." Otherwise, the transcript refers to "Sauers."

[2] See State v. Carl James Hasinger, No. 03C01-9206-00224, 1993 WL 291725 (Tenn. Crim. App., Knoxville, August 5, 1993). Hasinger entered pleas of guilt to first degree murder and especially aggravated robbery.

was auctioned off, but none was found. Johnson testified that he had examined everything in the truck and that he did not recall any blank Social Security cards or birth certificates. He also did not recall any maps or trip tickets. Johnson testified that the investigator for the Public Defender's Office had inquired about all of those items.

The Petitioner's trial was set for January 7, 1992. In late November or early December 1991, the Petitioner's original lead attorney was allowed to withdraw by agreement of the parties. On December 9, 1991, less than a month before trial, Edward G. Miller (counsel) was appointed to aide Alan Feltes (co-counsel) in the Petitioner's case. Alan Feltes had been working on the case since April 1991. At trial, counsel made a motion for a continuance because he claimed that he had not had enough time to adequately prepare for the Petitioner's trial. Defense counsel stated, "I think I know a little bit about everything, but not a whole lot about anything on the case." In addition, counsel stated, "I don't think that the time I've had to prepare this case is sufficient to - - to provide him with competent legal counsel on a death penalty case." However, when the trial court questioned counsel as to what else needed to be done that should have been done, counsel replied, "I think basically most everything has been." Counsel stated that the case had been investigated, but he had not had time to become familiar enough with the facts. The trial court denied the motion for a continuance.

Defense counsel made another motion for a continuance based on the unavailability of witness James Long. According to counsel, Long was released from the Sevier County Jail before counsel was able to subpoena him. Counsel stated that he was diligent in trying to find Long. Counsel argued that Long was in an adjacent cell to Carl Hasinger, the other man accused of murdering the victim in this case, and that he would have testified that Hasinger told him that he committed the murder alone. The trial court denied the motion, stating that the witness would merely corroborate a "much greater and detailed written statement" provided to the Petitioner which is "more exculpatory." Moreover, the trial court noted that the defense presented no proof that he could secure the attendance of the witness for a later date should the continuance be granted.

Defense counsel also made a motion to compel discovery for maps and Automobile Association of America (AAA) trip tickets which were in the victim's truck when it was searched in Norfolk, Virginia. Counsel argued that these items were requested from the District Attorney General "on more than one occasion."

## CONTINUANCE

The Petitioner argues that the trial court erred in denying counsel's request for a continuance based on the late appointment of counsel and counsel's inadequate time to prepare for trial. Lead defense counsel was appointed less than a month before the case was set for trial after Petitioner's private counsel had been allowed to withdraw from the case. At the time he was appointed, counsel was involved in numerous criminal cases, including one first degree murder case. However, co-counsel had been working on this case since April 1991, when the Defendant was arrested.

The issue of the denial of a continuance was litigated on direct appeal, and this Court concluded that the Petitioner did not suffer any prejudice because of the late appointment of counsel. Zirkle, 910 S.W.2d at 883-84. Therefore, this issue cannot now be re-litigated before this Court. Allen v. State, 854 S.W.2d 873, 875 (Tenn. 1993).

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Petitioner now argues that he received ineffective assistance at trial due to counsel's inadequate time to prepare. Specifically, the Petitioner argues the following: (1) that counsel failed to obtain "crucial evidence" from the victim's truck, (2) that counsel failed to subpoena a critical witness, (3) that counsel failed to present all the statements made by Hasinger regarding the murder, and (4) that counsel was deficient in not allowing the Petitioner to testify at trial. After a thorough review of the record, we conclude that the Petitioner has failed to show that he received ineffective assistance of counsel at trial.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-210(f). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001) (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). A post-conviction court's conclusions of law or of mixed questions of law and fact, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely *de novo* review by this Court, with no presumption of correctness. Id. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn.1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695.

-4-

This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

The Petitioner first argues that counsel did not secure "crucial evidence" from the victim's truck before it was sold and that "many, if not most, of the elements of his story could have been supported by physical evidence" that was in the truck. Specifically, the Petitioner argues that the truck contained travel tickets that showed the victim's route, documentation of the Petitioner's broken arm, and receipts from the trip. According to the Petitioner, these items would have added credibility to his version of what happened to the victim and would have shown that he did not deliberately bring the victim to Tennessee to kill him. The Petitioner argues that the information about his injury would have shown that he physically could not have lifted a large rock like the one used to murder the victim.

The Petitioner has failed to show that counsel or co-counsel was deficient in attempting to procure evidence from the victim's truck. According to Detective Brett Johnson, the victim's truck was accidentally sold along with all of its contents. The victim's truck was actually supposed to be turned over to the victim's mother. Co-counsel testified that he signed an order authorizing the release of the truck but not its contents. In addition, there is evidence that co-counsel and the investigator for the Public Defender's Office specifically inquired about maps, AAA trip tickets, blank birth certificates, blank Social Security cards, and a tire iron. None of these items were recovered from the truck. However, a picture of the truck's contents did show what appeared to be travel tickets. The Petitioner has failed to show any deficient performance by his attorneys in their efforts to procure evidence from the victim's truck.

Further, the Petitioner has failed to show specifically how the introduction of evidence from the victim's truck would have contributed to his defense. The Petitioner argues that the travel tickets would have shown that the victim had planned a trip across the country and that the Petitioner did not deliberately bring the victim to Tennessee in order to kill him. Although the tickets were not available at trial, the photograph of the vehicle's contents was available. Moreover, the route of the victim before he arrived in Tennessee was not an issue in the case. Although the tickets might have bolstered the Petitioner's credibility, they would not have shown the Petitioner's intent at the time of the crime. Regarding the Petitioner's injury, although counsel did not introduce the Petitioner's

medical records, counsel did introduce into evidence the forty-five pound rock to show that it would be difficult for anyone to lift over his head. The Petitioner's medical records were not presented as evidence at the post-conviction hearing, therefore, the post-conviction court could not assess their relevance. Further, the Petitioner has failed to show how the absence of any other items in the victim's truck prejudiced his trial.

The Petitioner next argues that counsel failed to subpoena a crucial witness to testify at trial. The Petitioner argues that counsel was aware or should have been aware that James Long, an inmate in the Sevier County Jail along with Carl Hasinger, was going to be released prior to trial. According to Long, he and Hasinger were in adjacent cells, and Hasinger told him about the murder. Long wrote in one statement that Hasinger told him that he had committed the murder by himself. In that same written statement, Long said that he would be released from jail in December 1991. Despite this statement, a subpoena was not procured until January 4, 1992, just three days prior to the trial and after Long was released from jail.

Although we agree with the Petitioner that Long should have been subpoenaed prior to his release from jail, we conclude that the Petitioner was not prejudiced by Long's absence. Counsel testified at the post-conviction hearing that Long's testimony was critical to corroborating the Petitioner's story. The basic content of Long's statement, however, was admitted through the testimony of Dale Smith, a minister to both the Petitioner and Hasinger. Smith testified that the Petitioner brought him a statement that had been written by Hasinger in which Hasinger admitted to murdering the victim and stated that the Petitioner did not participate in the crime. Smith testified that Hasinger admitted to him that he had written the statement and that no pressure had been placed on him to do so. In addition, Counsel acknowledged at the post-conviction hearing that since the trial, Long had been injured in an accident that caused him brain damage, rendering him unable to testify in a new trial.

The Petitioner further argues that counsel was ineffective in failing to present all of Hasinger's statements regarding the details of the victim's death and that counsel was unable to adequately point out the inconsistencies in the statements that were presented. However, the post-conviction trial court noted that evidence of Hasinger making contradictory statements "came in through other testimony." We conclude that counsel's introduction of certain statements and not others was trial strategy and absent a showing of deficient performance by counsel, should not be "second guessed" by this Court. Williams, 599 S.W.2d at 278-79.

Finally, the Petitioner argues that counsel was deficient in not properly advising the Petitioner concerning Petitioner's right to testify at trial. The Petitioner now argues that he was denied his right to testify. It is well established that criminal defendant has a constitutional right to testify. Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). This right may only be waived personally by the defendant. Id. at 161. Counsel testified at the post-conviction hearing that he did not specifically remember having any discussions with the Petitioner regarding his testifying at trial, although it was his custom and habit to do so, particularly in a first degree murder case. According to counsel, the Petitioner would have testified about his arm injury and his care of the victim before their arrival in

Tennessee. Counsel also stated that the trial judge generally did not inform defendants of their right to testify. However, the Petitioner acknowledged that he had been in court on a number of occasions for various convictions prior to this case. The state argues that a logical inference from the Petitioner's numerous court appearances is that the Petitioner understood his constitutional right to testify and knew that evidence of his prior convictions would be admitted if he testified.

On the matter of the Petitioner not testifying, the post-conviction trial court found the following:

> [Counsel], an attorney of broad experience in criminal law, being Public Defender for twelve years or so, testified that it is his practice to advise the defendant of their [sic] right to testify and make decisions as to whether he will advise them they should or should not testify. He cannot specifically recall in this case that he did make that specific admonition or have that particular discussion with [the Petitioner] in this petition, but it would seem logical that he would and just of the general custom of the practice, which we all know is a matter of fact, that that is a part of the duties of the defense counsel in advising a client.

The trial court went on to say that it understood that counsel did not think it would have been very wise for the Petitioner to testify because of the likelihood that he would be impeached based on his statements. The trial court found that the decision not to testify at trial was made by the Petitioner and counsel, and "this after decision now by Mr. Zirkle that he wanted to testify is not convincing." After a thorough review of the record, we conclude that the preponderance of the evidence is not contrary to the post-conviction court's findings of fact. See Fields, 40 S.W.3d at 456. Thus, there was sufficient evidence for the trial court to conclude that the Petitioner was advised at trial by his attorney concerning his right to testify and that he chose not to, thus waiving his right to testify.

Accordingly, the judgment of the trial court is in all respects AFFIRMED.

---

ROBERT W. WEDEMEYER, JUDGE